## The C., D. & M. R. Co. v. Schewe.

1. **Contract**: CONSTRUCTION OF: RAILROAD. Where a party agreed that he would give to a railway company a sum named if the railway should be constructed, and a train running to "within one mile of Elkport Post Office" at a time specified, and the road was built at the time named in the contract and the depot located within one mile of the post office, and on the day specified a passenger train ran to a point within two hundred yards of the depot, it was *held* that the company had substantially complied with the terms of the contract and the subscriber was liable thereon.

*Appeal from Clayton Circuit Court.*

MONDAY, DECEMBER 11.

THIS action is brought to recover upon an instrument which is in the following words:

"$25.00.

"ELKPORT, IOWA, September 25, 1871.

"In consideration of the benefit which I expect to derive from the construction of the Chicago, Dubuque & Minnesota Railroad, I promise to pay said company twenty-five dollars, as soon as said road shall be built, and the cars running thereon, to within one mile of Elkport post office, and a depot located and built within same distance, provided that this obligation shall be void if the road shall not be running as aforesaid by the first day of September, 1872, but if the road is running up Turkey river instead of Volga river this subscription is considered to be void.

HENRY SCHEWE."

The plaintiff avers that the road was built, and the cars running thereon, to within one mile of Elkport post office by the first day of September, 1872, and that the road is not running up Turkey river instead of Volga river. The defendant's answer admits the execution of the instrument, but denies the other allegations of the petition. Judgment for defendant. Plaintiff appeals.

*S. P. Adams* and *Stoneman & Chapin*, for appellant.

*L. O. Hatch*, for appellee.

ADAMS, J.—The evidence shows that by the last day of August, 1872, the road was ironed to the Elkport depot, which was a little more than three-fourths of a mile from the Elkport post office, and that a construction train ran over it on that day; that on the 1st day of September a passenger train ran to within about 200 yards of the depot, but it does not appear whether it ran within a mile of the Elkport post office or not. The evidence further shows that afterwards neither freight nor passenger trains were run for a considerable time, but that a mixed train, which was essentially a construction train, was run for the purpose of hauling timber to build a bridge, and to accommodate what travel there was. After about ten days the construction train was taken off, and a tri-weekly freight train with a caboose attached was run. The depot was only partially built on the 1st day of September, but was completed by the last of September.

The question in this case is as to whether the plaintiff had complied with its contract at the time the suit was com-

1. CONTRACT: construction of: railroad. menced, which was on the 1st day of September, 1873. We are of the opinion that it had substantially. It was not necessary that the depot should be built by the 1st day of September, 1872. It was necessary that the road should be running by that day to within one mile of Elkport post office. As to the depot it was sufficient if that was built before the suit was commenced; and it was built by the last day of September, 1872.

Whatever doubt there is about the case arises upon the question as to whether the road was running by the first day of September, 1872, to within a mile of the Elkport post office, within the meaning of the contract.

An unmixed construction train was running earlier than that, but we do not think that the running of that train was a performance of the contract. The defendant was not interested in the running of a train that was used simply in the

building of the road. It was evidently his intention to provide that the road should be running by the 1st day of September, for the accommodation of the public. On that day a passenger train ran within about 200 yards of the depot, but perhaps not within a mile of the Elkport post office. Had it run to the depot, it would according to the evidence have run within a mile of the post office. It appears that there was a construction train on the track at the depot. Whether the passenger train stopped where it did because the construction train was on the track, or for some other reason, does not appear. It is certain that it did not stop because the road was not completed to the depot. We think, then, that the fact that the train stopped some 200 yards before it reached the depot may be regarded as unessential, and that the depot may be regarded as the destination of the train, and as essentially reached by the train.

In our opinion the road was running to the depot, within the meaning of the contract, by the 1st day of September, and the plaintiff was entitled to recover.

REVERSED.