KORSHOJ CONSTRUCTION CO., Inc.,
Plaintiff,

v.

MILLS COUNTY, IOWA and Board of
Supervisors of Mills County, Iowa,
Defendants.

Civ. A. No. 1–251.

United States District Court
S. D. Iowa, W. D.

Nov. 4, 1957.

Raymond A. Smith, Philip J. Wilson, Council Bluffs, Iowa, for plaintiff.

Eliot Thomas, Glenwood, Iowa, for defendants.

HICKLIN, District Judge.

On October 5, 1954, plaintiff and defendants entered into a contract for the performance of certain construction work in Mills County, Iowa. This contract provided for the digging of a drainage ditch along a road, and for placing a concrete tube through the highway at a point where a bridge had to be removed. The removal of the bridge was provided for separately as a responsibility of the County. The entire contract was a separate portion of a project which was known as the Mule Creek Watershed Protection Project of the Mills County Soil Conservation District. By its terms the written contract listed fourteen different items which were to be performed, but only two of the items were found to be in dispute after the matters had been gone over in a pre-trial conference.

The parties have for the most part agreed as to the amount which was due under the contract. The first difference between them arose on the question as to whether under the terms of the contract the defendant County was justified in retaining the last payment, because they claim that the contract itself provides that the Korshoj Construction Company was first obligated to pay the County the sum of $2,000 as liquidated damages at the rate of $40 per day for having failed to complete the contract on the first day of July, 1955, their claim being that it was not completed until August 20.

Their second disagreement arose over a claim by the plaintiff that it had been required to perform certain additional excavation work on an item of earth fill, which was never paid.

■ The second dispute is the easier to dispose of. Neither plaintiff's witnesses nor the County Engineer have very definite or certain information, but defendants finally produced a witness, Bondurant, who was the engineer in charge of the project on behalf of the United States Government in connection with the soil conservation service, and who had possession of the original plans.

Upon the Court's own motion, he was requested to testify as to whether he could determine that any excavation work had been performed by the contractor in addition to that called for by the original contract.

It was agreed that in addition to the formal contract, which consists of only one sheet, a volume of technical specifications, which were admitted into evidence, also the original plans for the project, also the standard specifications of the Iowa State Highway Commission for the construction of primary and secondary roads were a part of the signed contract and were the basis of the agreement. An examination of these technical specifications discloses that paragraph 130.3 thereof provides as follows:

"Payment will be made at two (2) times the contract price per cubic yard for 'Excavation-Structures' for all excavation performed as directed by the Engineer below the lowest excavation limit shown on each cross section."

This Engineer then admitted that he was able to determine by an examination of the plan before the project was started, and a comparison with a cross section thereof which was displayed on the same sheet, that actually 299 cubic yards of earth had been excavated by the contractor, which was in excess of what the original plans had called for, and he further admitted that this yardage had never been paid for even at the single contract price of $3.30 per yard.

The Court accordingly finds as a fact, that the contractor is entitled to be paid the sum of $1,970.10 for additional excavation, as prayed in plaintiff's amended complaint.

■ With reference to defendants' claim for $2,000 liquidated damages, questions of both fact and law present themselves. The burden is on the plaintiff to show, in the first place, that the provision in the contract for liquidated damages was actually a penalty clause, rather than what it purports to be; the burden, on the other hand, is upon the

defendant Mills County Board of Supervisors to show that the duration of the alleged breach in the fulfillment date of the contract was as claimed, i.e., from July 1 to August 20.

■ The testimony in this respect is also conflicting and uncertain. Some of the contractors testify that all of the work was substantially done, except a little cleaning up, by July 15. They testified that the road, which was a secondary road, as distinguished from a surfaced or primary road, was in use at least from the 15th of July onward. Whether it was smoothly graded does not appear, but both the County Engineer, Rohde, and one of the subcontractors did testify that the County Engineer inspected the job on August 1, required that the road be bladed, and that it was done. A member of the Board of Supervisors testified that he inspected the site on August 20, and while he did not state as to whether the road was actually being subjected to travel, he noted that a sign stating that the road was under construction had not been removed. There is no showing as to whose responsibility it was to remove such sign, or who eventually did so, but it is a further finding of this Court as a fact that on August 1, 1955, the project was for all intents and purposes substantially completed and that the plaintiff was actually thirty days in default.

■ The Court rules as a matter of law that the provision in the contract for the payment of liquidated damages in the event that the project was not completed on or before July 1, 1955, was a lawful provision and that it ought to be enforced within reason. This was a public contract and it was highly proper for the Board of Supervisors to provide for liquidated damages in the event of failure to complete it on time. It is, of course, practically impossible to determine in advance the actual damages which may be sustained to the public on account of a failure to timely complete a public work of this nature. The Court finds that the provision for $40 per day is a fair approximation of such damage,

and that the provision in the contract is therefore legitimate and lawful and is not to be interpreted as a penalty. The burden is on the contractor to show otherwise.

■■ Plaintiff urges that he is excused from completing the contract on the date mentioned because of provisions contained in the contract itself. He refers to a section known as 1,108.08 in the specifications. The Court has carefully read this provision, and it appears that it is merely a permissive authority given to the County to extend the contract on the ground of delays, additional work or other reasons beyond the control of the contractor. The clause, however, also contains the provision that no extension of the contract will be allowed on account of contract variations which amount to less than twenty percent of the original. The actual amounts herein involved were far less than that percent. It would not therefore be the prerogative of this Court to say that the County authorities abused any permissive or discretionary authority to legally extend the contract, and it appears that they did not do so. This case therefore does not fall within the purview of the opinion in United States for Use of Gillioz v. John Kerns Construction Co., 8 Cir., 1944, 140 F.2d 792, 152 A.L.R. 1340, cited by the plaintiff. In the case of S. D. & D. L. Cota Plastering Co. v. Moore, 247 Iowa 972, 77 N.W.2d 475, 478 the Court took note that there was a difference between law and equity in the interpretation of such a contract when it said:

"Generally equity is somewhat less strict than law in requiring performance by one who seeks to enforce a contract." Citing Huffman v. Hill, 245 Iowa 935, 65 N.W.2d 205.

This case is at law and while more strictly interpreted it is still the province of the Court acting as a jury to determine the date when the contract was for all intents and purposes actually performed. The Court is not bound by the decision of the Mills County authorities.

The Court is adopting the findings of fact and conclusions of law appearing in this memorandum, in lieu of preparing and filing separate findings and conclusions, as is permitted by Rule 52(a) of the Rules of Civil Procedure, 28 U.S. C.A.

### Judgment

It is the judgment of this Court that plaintiff is entitled to the agreed contract price of $11,750.53, diminished by liquidated damages of $1,200, and enhanced by the award for additional excavation of $1,970.10. Judgment is accordingly entered in favor of the plaintiff and against the defendants in the sum of $12,520.53, which amount being greater than that tendered by the defendants, shall draw interest at five percent from August 1, 1955, and for the costs of this action, to all of which findings of law and fact and judgment defendants except.